Corporation. Mr Farrell. Good morning. My name is Wayne Farrell from Jackson, Mississippi, and I represent Glenn Pace in this case. The two arguments that we that I intend to make is the district court error by if it had subject matter jurisdiction erred in dismissing Cirrus, AMSAFE, Continental, and Arafaho for lack of jurisdiction. In a motion for on a remand, there's two other moving party must show the fraud in the pleadings or that the plaintiff is unable to establish any cause of action against, in this case, the Walter defendants. There's no question that the Walters defendants were the owners of the aircraft from the very time it was purchased until it was sold to Martin in 2017. In that time frame, the Walters defendants maintained the aircraft and operated aircraft as they're required to do by federal aviation regulations. In that time frame, they had three, four cylinders within three years that were defective and were caused to be replaced by more defective cylinders. These were the same four cylinders that were caused the engine failure on the date of the accident, November 22nd, 2019. So did Walters play a part in the in the replacement of the cylinders well before the accident? Um, and did they commit a tort in Mississippi at that time? Sure, they did. Or at least that's my allegation, and there's no disproof of that. In addition, the aircraft crashed because of the engine failure. It also has a, uh, emergency chute that lets the airplane down. The chute deploys and the airplane is let down to protect the pilot. Sirius says this is almost guaranteed to save your life if you if you have an engine failure. Sirius is an out of state defendant. So just focus, right? Sirius is an out of state defendant. So focusing just on the in state defendants, you're just still just first focusing on the in state defendants. The plausible claim you alleged against Walters is that let's start with the false statement. Did you allege a particular false statement by Walters in the logs as to the air worthiness? Yesterday said that the engine cylinders in the engine were air worth. Okay. Walters said that in the required by his the people that he hires to do the annual inspection. I guess I'm just asking you with the best record citation to the statement you say is false. That the that the that the air that the cylinders were air worthy that they worked and they were and they were not unreasonably dangerous, and they weren't going to be dangerous to Glenn Pace when he flew. It's a Walters himself made that assertion, or we don't know. Well, he signed the he he signed the the sale of the aircraft, and in that he conveyed that the aircraft was air worthy by signing that sales documents by signing the sales document. There's a false statement inherent in the sales document. That's the theory. No, sir, that's not. That's not the it's not just that the total theory. Um, he was negligent, but by by causing the engine cylinders to be defective within three years while he owned the aircraft, he replaced those cylinders with more defective. Yes, I understand that is your negligence claim. So if you want to turn to that you're the negligence claim is placed on his duty as a prior owner to the successor owner. Does that duty extend for two years till the crash in 2019? And if so, what's your best authority? If it's concealed and he's fail? I mean, the other the other part of this is the more egregious part is that that the airbags didn't function. But let's the one thing at a time, right? Because you're negligence theory, not the airbags, because then we'll focus engine plane airbags. We'll focus on the out of state defendants in a minute, I'm sure. But but just trying to pin down whether you have a plausible negligence claim. What is your best authority for Walter's duty? If it is the duty of a prior owner to a six to a purchaser that extends all the way to a crash two years later? Well, I think I think my best argument is that that he, as far as the aircraft, the aircraft engine. Well, no, his duty. I am. I'm trying to sort of parse, but that I may have the wrong framework and I should just let you continue. So do you want to get to the whether there's jurisdiction over the out of state defendants, the you were saying Walter's was negligent. And I'm sort of asking, based on what case, where does his negligence as the prior owner extend to an ongoing duty of airworthiness? Because he had those duties, he didn't hit them in the aircraft logs. And then because under Mississippi law, there's three states or there's actually five or six states that adopt the federal aviation regulations as their standards. One of them is Mississippi. One of them is Iowa. One of them, I think, is Alabama. But Illinois is not one of them. And the fact is that it it requires the Mississippi, the Mississippi statute requires the court to find that the owner of the aircraft is primarily responsible for maintaining the aircraft airworthy condition. He's the owner of the aircraft. He's got the ability to make sure that aircraft is safe for anybody that flies in it. We're not talking about automobiles. We're talking about airplanes. So that's why we have special regulations that requires the 405, which has been adopted by Mississippi, requires that the aircraft owner repair and replace inoperative parts of the aircraft. Mr. Walters didn't do that. He also um it requires the um the owner to ensure that the aircraft is regularly inspected. Mr. Walters didn't do that. If he had done a airbags on the emergency parachute, this this Christ would not have happened. He didn't do those things. He's required by Mississippi statute. He's required by um the federal aviation regulations, which we've adopted. Mr Farrell, can you hear me? I know you're having problems with Judge Higginson. I'm even more soft spoken. Um, let me make sure I understand. It the F. A. A. Regulations and the restatement creating a duty to third parties. Uh, there's really no case law that makes the combination that you want us to apply. Uh, it seems to me, are you saying that these two defendants, these two in state defendants, uh, themselves were responsible for the inspection that shows up on the log or they knew the action was flawed? Are they responsible because they arranged for the inspection? Why are they responsible for whatever the inspection said, which is that this is an airworthy aircraft responsible because they had a duty to inspect the aircraft back when they owned the aircraft and they failed to make the proper repairs and inspections which caused this aircraft bag, the airbags and the emergency, the emergency parachute. Well, my understanding is if they conceal the fact that this this engine is not airworthy, it's not safe. If they do, they conceal it from the inspectors and the concealed in the aircraft logs by either making a false entry or they don't make the proper entry. Proceed. Same thing with with the negligence that they they didn't properly fix the continental cylinders that were later that caused this accident. Three years later, that happens all the time for this airplane set, uh, on, you know, unoperable for a certain period of time. And then our people flip for a certain period of time. But things, engines and airbags, they, you know, they, they can, they can, they can leave. They can remain unfound. For instance, the airbags, if you know, on an airbag, you don't know unless you make a proper inspection that the airbags faulty until you have that accident. When Mr Pace was was when he was landed, he expected the representatives in their representation that the parachute would let him down with virtually no harm to him. Then when he gets down, he expects these airbags to function. We know the airbags didn't function. We've had an inspection. They didn't function. And that airbag was concealed. The fact that it was defective was concealed from Mr Pace. There was no entry in the aircraft logs. It said that it wasn't working. What's what's Mr Pace's relationship to the owner of the plane Martin Aviation? Well, he was a primary pilot for them. He's the pilot. Yeah, he was, he was, he was where they headquartered. Where is, in other words, they had two years of inspections. Presumably they did that didn't figure out the cylinder problem. Well, people, I mean, you asked, I'm required that there is no possibility that I have no cause of action. There's a possibility that the people that inspected the airplane did it for for different purposes that there's no, we produced the maintenance records and we showed that Martin Aviation didn't do any work on the cylinders, didn't do any work on the engine, didn't do any work on the airbags and didn't do any work on the on the on the on the parachute. There was nothing in the log books that indicated that they should. And Mr Pace could not have found out without the proper representation being made in the log books that this aircraft was that the airbags were going to fail when he hit the ground. If, just because time's running out, if Joinder was improper, then moving to the dismissal of the out of state defendants, is your argument that there is general jurisdiction over them? Or is your argument just that there's specific jurisdiction? Do you understand my question? Are you talking about the four other defendants? Yes. Well, you know, our law has changed a lot. I think back to, you know, I've been in this business a long time and we've we've fought these battles about jurisdiction and, you know, back when I started practicing law in 1980 and 90 and, you know, it's always the corporate, the Beechcraft, they, you know, they they sell the airplane but they have documents that show that the airplane was sold in Wichita and then transferred in Wichita. Then it's, you know, it's just a way you set up the documents. In this case, the aircraft was sold and it ended up first time in Mississippi. So, I guess to answer your question, we're alleging specific jurisdiction as to, although I don't think that, I think that's not what the law should be and I don't think it's what it used to be, but anyway, I think that that if anybody is is subject to general jurisdiction, it's amsafe because they have an agent in Mississippi. They do business in Mississippi. They do millions of dollars worth of business in Mississippi. Now, they claim they only do 1%, but 1% is 270 million dollars. So, what's the specific jurisdiction for Cirrus? Just that they sold the plane in Amsafe? No, Cirrus. Here it is. That's specific jurisdiction. Based on what? The fact that they, that this, according to the, to Ford versus Montana, in our latest Supreme Court case, it says that if you, if you put a product in this, in the chain of commerce and it's expected to be, to end up in Mississippi, Cirrus knows, knows that this aircraft, the bill of sale that shows that it was to... Yeah, no, that's right. The bill of sale does say it was sold in Mississippi LLC, but then it gets hangered where? Where did it get hangered? Florida, and then it's seized and sold in Florida to Delaware. So, I guess the issue is what does the original sale have to do with the litigation? Well, Your Honor, you didn't ask me to, to argue this, but the problem I have is I'm a sole practitioner. You know, we filed this lawsuit, you get it right before the Texas statute of limitations runs. So, we tried to get it filed and, and we had, we were not able to see the records. We were not able to see the logbooks. We asked to get them. Nobody would give them to us. So, we filed the lawsuit. I tried, we, we tried to, then in the, in the, in the meantime, we had an, an aircraft wreckage inspection and we got the logbooks and we got, and we found out that the cylinders were defective. They were, they were not there. We found out that the airbags didn't work. We found out that the series parachute didn't work. So, I'm sorry, I'm losing my, my control here, but the fact is we should have had jurisdictional discovery. I mean, that would have given us to find out what these people really do. We, I mean, I had, they, we, the defendants get 30 days to, to file an answer. They ask for 20 additional days to, to respond. Instead of answering it, I get these, all these motions to dismiss with the standard cookie cutter affidavit that they've never been to Mississippi. They don't want to come to Mississippi. Okay. Mr. Mr. Farrell, your, your initial time has expired and you've saved some time for rebuttal. Thank you, sir. Mr. Cunningham. May it please the court. Your honors, my name is Ross Cunningham. I represent Appalachian Continental Motors. We are here asking that this court's district, this court, the district court's orders denying plaintiff's motion to remand and granting the Appalachian's motions to dismiss for personal jurisdiction be affirmed. This court requested of Appellant's counsel issues certain about the particular false statements and the duties. I'm going to start with the duty with respect to negligence. Appellant's counsel cites the federal aviation regulations in his briefing and he mentioned it briefly in his oral argument. Section 91.403 and 91.405 are the standards under the federal aviation regulations that apply to the owner or operator of an aircraft. And to summarize what's required in there, it says that the owner or the operator of an aircraft shall ensure that it's maintained. That standard applies to the current owner or it does not apply to any former owner or operator of an aircraft. In this particular case, as the court has noted, the aircraft was seized by the United States government in 2016 and it was sold through an asset forfeiture sale in October of 2017. It was sold to a company called Martin Aviation in Mississippi. Mr. Appellant's counsel said that Martin Aviation didn't do any work on the engine after purchasing it. That is incorrect. In ROA, the record site ROA 5306 is a particular logbook page from this aircraft's logbooks from November 2nd, 2017 in Lakeland, Florida, where Martin Aviation had a mechanic in Lakeland, Florida, perform an annual inspection on the aircraft. He also removed and replaced all six cylinders in the engine. Did the district court rely on that as an intervening cause? Or are you saying there's a bright line rule, no duty continues after sale? Are you saying there was a duty that continued until Martin conducted its own inspection? No, absolutely. I'm bright line. There is absolutely no duty for a former owner after sale. The district court did not cite to the... See, that seems difficult. You're saying under Mississippi law, prior owner owes no duty? So let's say it's a car, and I don't maintain my vehicle, and it's got a defect. I sell it. Next day, car crash, passenger injured. My breach of my duty to maintain it when I still owned it doesn't allow for litigation? I don't know that the automobile analogy is... Well, okay, just it's a plane. I mean, you're saying that... I don't understand that. If I breach my duty to maintain it while I own it, why isn't the breach then consummated two days later? Under the Federal Aviation Regulations, they are very clear. It is a bright line rule under the Federal Aviation Regulations, 91.403 and 405, that it is the owner's responsibility to ensure the aircraft is airworthy. Upon the sale, that duty transfers to the new owner. Okay, but the regs don't say that last point. They just say it's the owner's responsibility. My suggestion is, while Walters was the owner, his defect then led to the breach of the duty he owed to maintain it when he had it. What's wrong with that logic? And if so, where's the case? Southside Trust, Your Honor. That's the only case in the country that has ruled... That's the Illinois case? Yes, Your Honor. That is the only case in the country, and we've scoured, believe me, we've all scoured, looking for a case that's dealt with this... With respect... I'm basically, there's something we can consider. I would not, as you fully understand, it's not authoritative, and we're sort of on our own on this, and what Mr. Farrell is relying on is this obligation that Judge Higginson's been, I shouldn't use the word pressing, but has been asking you about, and then you add the restatement on top of that. And Mississippi does sometimes recognize the restatement. It's talking about if someone is aware of a then sold, there can be an obligation to inform the buyer of that. So you put these two things together. So what is, and what does it have to do with it, what is wrong with that theory other than Illinois didn't like it? Fair enough, Your Honor. All I can say is that the federal aviation regulations are quite clear that they only apply to the owner, the current owner or operator. With respect to, and I might have to deviate a little bit here, with respect to Section 388, plaintiff never pled restatement 388 throughout his original complaint and his amended complaint. The word restatement and the numbers 388 do not appear in there. You need to plead your legal authorities, is that what you're talking about, plead it in the complaint? I'm not saying he needed to say that, but he did not plead it. The first time that he raised 388 as a potential basis for anything was in his reply brief, which the district court found had been waived. Be that as it may, and I did his reply brief in the district court. He raised 388 for the first time, which the district court found had been waived because it was not included in his opening brief. But with respect to, and you mentioned it and Judge Higginson said it earlier, what was a particular false statement, and I believe you also said, is the owner responsible to have it inspected or did they have to know it to be false or the information was false? Here is what was pled in the plaintiff pled that Walters had a log book that said the aircraft was un-airworthy. Sorry, let me back up. Walters had a log book that said the aircraft was airworthy. That's true. He had it inspected by a licensed FAA mechanic who performed the appropriate work under the federal aviation regulations to declare that the aircraft, including all of its component parts, was un-airworthy. That mechanic put the statement in the log book that says I have performed my work in accordance with the manufacturer's recommendations and the federal aviation regulations and find the aircraft to be airworthy. That is it. That is the only representation, and it wasn't even that clear in Plaintiff's briefing, as to a misrepresentation made by Walters. He does not plead, even on any particular statement, was false. He never makes an allegation. That is required. It is required for him to have a cause of action, even if it was to apply against Walters. He would have to plead and prove that Walters knew it was false, and there's no allegation that Walters knew that the entries in the log books that say the aircraft is airworthy were false. Moving on to the issue of the cylinders that ... Let me stop you on that. I was trying to recall, if I heard it today or read it in the brief, didn't Mr. Farrell say here in oral argument that knowledge was there, knew that the cylinders weren't operating correctly, knew some other details? Was that a statement here in oral argument? Mr. Walters, or Appellant's counsel, said it. Yeah, but it's not in, it's not an allegation in the complaint. It's not an allegation in the complaint, and it's not in the appellate record. Moreover ... You can move on. I just want to make sure. I appreciate that. Moreover, in part of the briefing in the underlying case, when pressed for the issue of what he was complaining about, he complained, plaintiff, complained about the cylinders. He said in briefing at the district court level that the cylinders weren't broken incorrectly, that Mr. Walters didn't follow the Continental Motors break-in procedures, and that caused damage to the cylinders. Well, again, Appellant's counsel made factually incorrect statements to this court, both in his briefing and here today, that Martin Aviation didn't do anything to the airplane. But again, on Record 5306, Martin Aviation had all six cylinders replaced. It is a logbook entry by a mechanic shop in Lakeland, Florida, where the aircraft was based at the time, where the numbers one through four cylinders were removed and six were replaced with new cylinders. So even if plaintiff's allegations about what Walters knew or didn't know, or Walters possessing a logbook that says the aircraft is airworthy, that changed on November 2nd, 2017, when Martin Aviation replaced all six cylinders. And that mechanic signed the logbook saying the aircraft was airworthy. And every mechanic that touched the airplane after that, from November 2nd, 2017 until the day of the crash, certified the aircraft as airworthy. In the plaintiff's pleadings, he never claims that Walters knew anything to be false. He simply says the aircraft, the logbook said the aircraft was airworthy, and five years later it crashed so it couldn't have been. He does not make a particularized false statement allegation in his complaint anywhere. Are you going to get to the dismissal or ask your client, Continental? I'd be happy to talk to it. I have four minutes left, Your Honor. With respect to Continental Motors, Continental Motors provided affidavit proof that it does not, first of all, under Mississippi, the three-part test being the contract test, the tort test, or the doing business. Plaintiff's has acknowledged this is not a contract problem. There is no contract between Continental and Mr. Pace. He claims the tort and the doing business prongs are invoked. The tort occurred in Texas. I believe it's undisputed that the crash occurred in Texas, the injury occurred in Texas, and present to the estate of Port Roy, under Fifth Circuit 1984, under the Mississippi rules, under the Mississippi long-arm statute, a tort is completed when and where the injury occurs, not where the impact or any damages following from that injury are felt. The tort in this case occurred in Texas and only Texas. That gets us to the doing business prong of the long-arm statute. Continental submitted affidavit testimony that was uncontroverted, that said it does not, it is, it is, at the time it was a Delaware corporation with its principal and sole place of business in Mobile, Alabama. It does not have any facility of any kind in the state of Mississippi. No bank account, no registered agent. It does not do business in the state of Mississippi. The allegations in the complaint against Continental Motors were broad and somewhat confusing, but they effectively accused Continental Motors of defective design, manufacture, and advertising, or warning. The aircraft engine was designed and manufactured in Mobile, Alabama. The aircraft engine was and have been and are no contacts between Continental Motors and the state of Mississippi. So Continental Motors doesn't sell or service these cylinders in Mississippi? No, it does not. It isn't, would you agree it's not dispositive that the crash occurred in Texas? In other words, in what is it, worldwide Volkswagen? The crash is not determinative. The crash in and of itself with respect to nothing else and looking at no other single fact in the entire case or case law, there is no specific jurisdiction with respect to Continental Motors in the state of Mississippi for these facts and under the current state of law. Because it doesn't sell and it doesn't service, it's not like in Ford. Well in Ford, the injury occurred in Ford. No, but I don't think the court was saying Volkswagen doesn't apply anymore. It was focused on the extensiveness of the servicing of the exact part. I'm glad to hear you say you don't think that Volkswagen, the Ford decision was not perfectly clear on what does or does not apply anymore, but I agree with you that the Volkswagen opinion is still, I believe, good law. But in this particular case. It's crucial as to your client you don't sell and service in Mississippi. That is a very important fact, yes. The tort occurred in Texas. Continental Motors had absolutely no contact with respect to Minnesota, or sorry, Mississippi ever or with respect to Mr. Pace, this aircraft or this engine. If there's no other questions, I will cede 58 seconds, then I'll cede that to my co-counsel. Thank you, Mr. Cunningham. All right, I will let you come pronounce your name for us and then you have two minutes. H. Carter Marshall on behalf of Cirrus Aircraft. Your Honor, you're correct. I only have 120 seconds, so I'll be very quick. First thing, I want to adopt and incorporate Mr. Cunningham's statements on behalf of Judge Higginson. It is an incorrect assertment by my opposing counsel that this aircraft was sold in Mississippi by Cirrus. The aircraft bill of sale lists the purchaser's address, but the actual purchase and sale of this aircraft and delivery happened in Duluth, Minnesota. And the court can refer to the sales documents, which can be found at ROA 704, which specifically say that the delivery location for this aircraft happened and will happen in Duluth, Minnesota. You're saying change of possession happened in Duluth? Yes, sir. Transfer of title and change of possession happened in Duluth, Minnesota. Cirrus has zero contacts with respect to the state of Mississippi. Bill of sale reflects Hattiesburg, but... That's the address, Your Honor, of the purchaser. Right. That's just his address. The actual bill of sale and the FAA certification and the whole sale process happened up in Minnesota, and Cirrus does that purposefully because... So Ms. Fink, who signs it, the client, is in Duluth, actually? Yes, sir. That's my understanding. Very quickly on the issue of duty and the prior owner and past owner, I want to step back and from the specifics and just very generally tell this court that Congress, the courts, and the aviation industry as a whole recognize that these light aircraft are going to be in service for a very long time. All you have to do, Your Honors, is look at the statute of repose that Congress put on this aircraft at 18 years. That's almost two decades. That is a nod to the longevity of these aircrafts. I think we are opening up a dangerous can of worms to go past the FAA regulations that say airworthiness stick with the current owners versus the long potential line of prior owners. All right. Your time has expired. Thank you. Absolutely. Yes. So you would make that argument even as to a crash short of 30 minutes after sale? Your Honor, I think that all cases stand on their own facts, but I would think that in a situation like this one, where it was two years after the sale, that I don't think that that's an applicable analogy, but I understand your point. Thank you. Thank you. Was the counsel for AMSAFE? All right. You're out of order from the list that we had, so now you can pronounce your name for us. Yes, I will. My name is Nafis Chekhergei. I'm with Riley Safer Homes in Kansala, and I represent AMSAFE. I adopt the arguments that Mr. Cunningham made before us, and I think I'll just address a very specific issue relating to AMSAFE, if it's okay with the Court. Well, I guess I'm surprised you're saying sufficient sell and service in Mississippi could lead to specific jurisdiction, and as I understand the record, your airbags, you do sell and service a lot of them in Mississippi. Well, we do. I mean, as we stated in our brief, the sales are a small fraction, very small fraction, of the sales that AMSAFE has, so it's not enough to confer general's jurisdiction. We think that if you're selling a logic of Ford, and whatever residue of Volkswagen is still applicable, I thought you actually sell and service almost all of these airbags that are in Mississippi. Well, the aircraft, I mean, the airbags were sold and serviced, but they were put in the aircraft, not necessarily in Mississippi, because we don't have any facilities to do that in Mississippi. And combined with that, that the crash didn't occur in Mississippi, we don't think there's enough to establish specific jurisdiction over AMSAFE. I think... How are you different than Ford, other than the fortuity of where the crash occurred? Well, we're different from Ford because I think it was an important point in Ford that the crash occurred in that state. It was different... How would that be conclusive? I think it's a very important factor. That would be inconsistent with Volkswagen, yes or no? Well, I think it also goes in line with Bristol-Myers, where in Bristol-Myers, one of the issues was that none of the events, none of the torts occurred in California. So, looking at the totality, I think that where the airbags may be put in is important, it's one factor, but where the tort also happens is part of the analysis. What is in the record about these airbags and your company? Well, what's in the record is that... These specific airbags in this plane. Yeah, and these specific airbags in this plane were not manufactured in Mississippi because we have no manufacturing facilities in Mississippi. Were they ever serviced in Mississippi? Don't know? Probably in Florida, if they were ever serviced. We don't have anything in the record to suggest that they were done in Mississippi. Thank you. Thank you. Mr. Copeland? May it please the Court, my name is Trey Copeland. I represent Apertix, I think in the pleadings and the briefing it's also referred to as Arapaho Arrow. I'll address it as Apertix, if the Court pleases. Your Honors, I'm going to incorporate the arguments, the relevant arguments made by my co-counsel for the apologies with regard to subject matter jurisdiction and the lack of personal jurisdiction as to Apertix. Your Honors, getting straight to it, the only evidence that has been, was submitted to the trial court was the affidavit of our President, Mr. Oots, which is found in the record at 351 to 374. And it's very clear, the work that, my clients did a 50-hour service on the aircraft within a month or so, a couple months or so before the accident. That occurred in Colorado. The aircraft was brought by Martin Aviation to my client's facility in Colorado. It was serviced in October of that year, and then the owner, Martin Aviation, took it back to Mississippi. My client had never entered the state of Mississippi. In fact, the affidavit makes it clear, my client doesn't do any type of work in Mississippi. I think allegations were made that we do house calls of some sort. That is not correct. All the work that my client did was in Colorado. So going through the Mississippi long arm statute, the tort prong, and we deny that there was a breach of a duty, but if there was a breach of a duty, it occurred in Colorado. The injury occurred in Texas. No part of any tort occurred in Mississippi. So going on to the contract prong, again, if there was a contract entered, it was entered in Colorado. It was carried out in Colorado. The intent was it to be performed in Colorado. No part of it was performed in Mississippi. So you get to the doing business prong in the district court court. Your time has expired. Thank you. Yes, thank you, Your Honor. Okay, Mr. Farrell for rebuttal. Yes, sir. First of all, they brought up the issue that we didn't plead the restatement. We have notice pleadings, and the only reason I have a 30-page complaint is because of the Mississippi products liability law, which requires you to state everything specifically, or some of the judges have dismissed the case. But we tried to do it as simply as we can. We've said misrepresentation in the complaint probably 100 times, and so why wouldn't we cite the restatement as to that law? It's like any other authority. It doesn't have to be pleaded. I've heard these people – well, let me talk to Mr. Copeland first of all. Mr. Pace, he signed an affidavit that's in the record that said he contracted with Arafaho or whatever the name is to do the engine inspection. It was an annual. It was a partial inspection in Colorado. He did take the airplane out there because he has no choice. Until now, there's a new Madison – there's a new Cirrus Center now in Madison, Mississippi that does all that work. That didn't exist when he took the airplane out there. But he entered into the contract with Arafaho to do the engine. So there was a contract with a Mississippi resident to be performing a whole or in part in the state of Mississippi, and therefore the contract torque prong of the long-arm statute is applicable. We pleaded that there was torts committed in Mississippi that they committed in pursuant – the other Mississippi cases say that if there's any character of business in the state of Mississippi, then you're doing business pursuant to the torque prong, the doing business prong of the long-arm statute. Each of these defendants said they've never been to Mississippi. Well, explain to me how a Cirrus aircraft can have 36 aircraft – this is undisputed – they have 36 aircraft that are a million dollars apiece, or that's the average of that airplane, in Mississippi, that are owned and operated in Mississippi, and their manuals are required to be used by those owners. They're required to buy – to do annuals, to do repairs pursuant to Cirrus's aircraft maintenance manual, parts manual, and operators manual. The same with Beechcraft. They've never been to Mississippi. We're just across the state line. They've got 836 aircraft engines in Mississippi. Now, that may not seem a lot, maybe compared to Texas, but that's a lot of – those are a lot of engines. That represents probably half of the engines in Mississippi is – I'm sorry, is continental engines. And then we talk about – Where do we find that in the record? Isn't that in the record? Yes, sir, it's attached to Mr. Bryant's affidavit. We got the registry of the aircraft, and it has the owner's name, where it is, and it shows that it's in Mississippi. So how do those – you know, those engines just didn't happen to appear in Mississippi. They had a sales program. Now, they've now changed that. If things keep going, we have China owns continental, China owns Sirius. Are we going to require to go to China the next time there's a plane crash in Texas? And when I got this case, you know, I said, this is the case that the aircraft was sold to a Mississippi resident. Now, they may have, you know, had the sales documents that say it was delivered in Minnesota and all that kind of stuff, but this aircraft has never been hangered in any state other than the state of Mississippi. It was sold here, delivered one way or another here. It was maintained according to the manufacturer's AMSAFE, Sirius, and Continental's aircraft operator's manuals, their parts manuals, and their mechanics manuals. They're required to do that. If we could get some jurisdiction, we would find all those kinds of things. That's all. Thank you. All right. Thank you, Mr. Carroll. Your case is under submission. Thank you. Thank you, sir. Last case for today, Johnson v. Board of Supervisors.